1
2
3
4
5
6                **UNITED STATES DISTRICT COURT**
7                **EASTERN DISTRICT OF CALIFORNIA**
8
9
10
11   NECTALI ROMERO-ROMERO,            )   Case No.: 1:24-cv-00944-SKO (HC)
                                       )
12             Petitioner,             )   ORDER DIRECTING CLERK OF COURT TO
                                       )   ASSIGN DISTRICT JUDGE
13                                     )
                                       )   FINDINGS AND RECOMMENDATIONS TO
14        v.                           )   GRANT MOTION TO DISMISS
                                       )
15                                     )
                                       )   [Doc. 8]
16   MINGA WOFFORD[1], Facility Administrator, )
                                       )   [21-DAY OBJECTION DEADLINE]
17             Respondents.            )
                                       )
18   _____  )
19
20        Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus

21   pursuant to 28 U.S.C. § 2241.  He is represented in this action by the Federal Public Defender.

22   Petitioner filed the instant petition on August 14, 2024. (Doc. 1.[2])  On October 29, 2024, Respondent

23
24   _____
25   [1] Respondent moves to dismiss all unlawfully named officials. As explained by the Supreme Court in <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 430 (2004), the proper respondent in habeas cases is the "warden of the facility where
26   the prisoner is being held, not the Attorney General or some other remote supervisory official." In § 2241 cases involving non-citizen aliens detained at a private detention facility, the proper respondent is the warden of the private detention facility. <u>Doe v. Garland</u>, 109 F.4th 1188 (9th Cir. 2024). Accordingly, the Court hereby grants
27   Respondent's motion and dismisses all unlawfully named officials. The proper respondent is Minga Wofford, the Facility Administrator at Petitioner's detention facility.
28   [2] Citations are to ECF docket pagination.

                                      1

filed a motion to dismiss the petition. (Doc. 8.) Petitioner filed an opposition on November 19, 2024. (Doc. 9.) Respondent did not file a reply.

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims the duration and nature of his detention is excessive in violation of his substantive due process rights, and he should be released immediately from Department of Homeland Security ("DHS") custody under appropriate conditions.

For the reasons discussed below, the Court will recommend the motion be GRANTED and the petition be DISMISSED.

## I.      BACKGROUND[3]

Petitioner was born in El Salvador. He was admitted to the United States as a Lawful Permanent Resident on November 3, 1989, and has lived in the United States for the past 44 years. (Doc. 8-2.) On April 11, 2016, Petitioner was convicted of two counts of lewd and lascivious acts upon a 12-year-old female minor in violation of Cal. Penal Code § 288(a). (Doc. 8-3,4,5.) He was ordered to serve six years in prison. (Doc. 8-3,4,5.) Upon completion of his term of incarceration, on December 23, 2019, ICE took custody of Petitioner. Petitioner's custody status was reviewed and it was determined that Petitioner presented a risk of danger to the community. (Doc. 8-2.) He was denied conditional release on bond pursuant to 8 U.S.C. § 1226(c) and was charged with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), for having committed an aggravated felony. (Doc. 8-2.)

On March 10, 2020, Petitioner moved for relief from removal. (Doc. 1-6.) On July 28, 2020, an immigration judge ("IJ") denied his application for asylum and withholding, his application for deferral of removal under the Convention Against Torture, his application for a waiver under INA § 212(h), and his application for adjustment of status under INA § 245. (Doc. 1-6.) The IJ ordered Petitioner removed from the United States to El Salvador. (Doc. 1-6.)

---

[3] This information is derived from the petition, response, reply, and the exhibits attached to those documents. (Docs. 1, 15, 17.)

On May 29, 2020, prior to the IJ's decision, Petitioner moved for release from detention. (Doc. 8-6.) After a bond hearing, on June 3, 2020, a U.S. district judge denied his bail application without prejudice. (Doc. 8-7.)

On August 19, 2020, Petitioner renewed his application for bail release. (Doc. 8-9.)  On September 1, 2020, the district court again denied Petitioner's bail application. (Doc. 8-10.)

On August 27, 2020, Petitioner appealed the IJ's decision and removal order with the Board of Immigration Appeals ("BIA"). (Doc. 8-11.) The BIA affirmed the denial of asylum and affirmed the order of removal on August 10, 2022. (Doc. 8-24.)

On November 13, 2020, Petitioner filed a petition for writ of habeas corpus in the Northern District of California challenging his mandatory detention as prolonged and unconstitutional. See Romero Romero v. Wolf, Case No. 20-cv-08031.  On January 26, 2021, the district court granted the habeas petition and ordered a bond hearing before an IJ. (Doc. 8-13.).  On January 29, 2021, the IJ held a bond hearing and granted Petitioner a $2,500 bond. (Doc. 8-14.) Petitioner was released from DHS custody. (Doc. 8-14.)

On February 24, 2021, DHS appealed the IJ's decision with the BIA. (Doc. 8-15.) On January 13, 2022, the BIA sustained DHS's appeal, vacated the bond order, and ordered Petitioner detained without bond. (Doc. 8-16.) The BIA determined that the IJ had clearly erred in determining that Petitioner was not a danger to the community. The BIA further determined that Petitioner presented a clear flight risk and should have been denied release on bond.

On April 25, 2022, Petitioner filed a habeas petition in the Northern District of California. See Romero Romero v. Kaiser, Case No. 22-cv-02508. (Doc. 8-18.)  On May 6, 2022, the district court granted Petitioner's request for a temporary restraining order which enjoined ICE from re-detaining Petitioner without adequate notice and a hearing. (Doc. 8-19.)

From June 8, 2022, through October 11, 2022, Petitioner filed various motions for further bond review.  On October 11, 2022, the IJ denied Petitioner's application for bond and ordered Petitioner detained, again finding Petitioner posed a danger to the community. (Doc. 8-28.)  Petitioner was re-detained by ICE on November 2, 2022, and has been continuously detained since then. Following his detention, Petitioner filed a request for bond detention rehearing as well as an appeal of the denial of

bond with the BIA. On January 31, 2024, the BIA affirmed the IJ's decision denying bond. (Doc. 8-32.)

Petitioner also filed an amended habeas petition in the Northern District challenging his continued detention in Romero Romero v. Kaiser, Case No. 22-cv-2508. On March 3, 2023, the district court denied the petition finding Petitioner was lawfully denied conditional release due to the risk of danger to the community. Id.

On July 16, 2024, Petitioner filed a third § 2241 habeas petition in the Northern District challenging his continued prolonged detention. He moved for voluntary dismissal, conceding the Northern District was without jurisdiction.

Petitioner has also sought relief in the Ninth Circuit Court of Appeals. On August 12, 2022, he petitioned for review and requested stay of removal proceedings pending resolution of the petition for review. (Doc. 8-25.) The Ninth Circuit granted the stay of removal. Petitioner filed numerous motions for extension of time to file his brief, culminating with his motion on February 1, 2023, to hold the removal proceedings in abeyance. (Doc. 8-33.) On June 7, 2024, the Ninth Circuit remanded the appeal to the BIA for further findings pursuant to both parties' request. The Ninth Circuit continued the stay of removal. On remand from the Ninth Circuit, on January 14, 2025, the BIA denied Petitioner's motion to reopen. See EOIR Automated Case Information in the Matter of Nectali Romero-Romero, A-Number: 092-707-146, https://acis.eoir.justice.gov/en/caseinformation (last visited February 3, 2025). The matter is now apparently before the Ninth Circuit.

## II.    DISCUSSION

A.  Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner is being detained pursuant to § 1226(c).  Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)."  Section 1226(c) in turn states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1).  Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583

4

U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).  In <u>Jennings</u>, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'"  <u>Id</u>. (citing 8 U.S.C. § 1226(a)).  The Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions."  <u>Id</u>. at 304 (emphasis in original).  The Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." <u>Id</u>. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226 mandates detention. Petitioner contends that, although the statute mandates detention, his detention has become so unreasonably prolonged as to violate his Fifth Amendment substantive due process rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." <u>Demore v. Kim</u>, 538 U.S. 510, 531 (2003); <u>see also</u> <u>Carlson v. Landon</u>, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Although Petitioner does not facially challenge the statute, and the Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as applied challenge to 8 U.S.C. § 1226(c), the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as applied challenge under the Due Process Clause.

In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in <u>Zadvydas</u> read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. <u>Id</u>. at 699.

5

<u>Zadvydas</u> is materially different from the present case.  In <u>Zadvydas</u>, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." <u>Id</u>. at 690. The Court observed that where, as there, "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." <u>Id</u>. (internal quotation marks and citation omitted).  <u>Zadvydas</u> distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." <u>Id</u>. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in <u>Jennings</u>, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." <u>Jennings</u>, 583 U.S. at 304.

In <u>Demore v. Kim</u>, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), contending that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." <u>Id</u>. at 521 (quoting <u>Mathews v. Diaz</u>, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. <u>Id</u>. at 527-28. The Court noted that detention under § 1226(c) has a definite termination point. <u>Id</u>. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." <u>Id</u>. at 530. Nevertheless, the majority went on to hold that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. <u>Id</u>. at 530–31.

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in <u>Demore</u>, which clarified that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the

6

continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); Jensen v. Garland, 2023 WL 3246522 (C.D.Cal. 2023); M.T.B. v. Byers, 2024 WL 3881843 (E.D. Ky. 2024); Sanchez-Rivera v. Matuszewski, 2023 WL 139801 (S.D. Cal. 2023); Banda v. McAleenan, 385 F.Supp.3d 1099 (W.D. Wash. 2019). However, these decisions addressed prolonged continued detention *without affording the alien any procedural due process protections such as an individualized bond hearing.* The decisions did not consider the situation presented here, where Petitioner has had multiple individualized bond reviews where it was determined he presented a danger to the public and/or a flight risk. Indeed, the remedy in the above-referenced decisions was to afford the alien just such an individualized bond hearing.

    B.  The Mathews Test

        In analyzing whether a due process violation has occurred in this case, Petitioner urges the Court to weigh the factors identified in Doe v. Becerra, 2024 WL 2340779 (N.D. Cal. 2024), a recent case from the Northern District of California. In Doe, the district court identified five factors to determine whether ICE detention violates substantive due process: 1) the length of detention; 2) the government's contribution to any delay; 3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; 4) whether the government interests could be protected through less restrictive means; and 5) the conditions of detention and how they compare to criminal incarceration. Id. at *3. Respondent alleges that Petitioner's reliance is misplaced, since Doe is not binding on this Court, and offers no precedential value since the district court in Doe did not

have subject matter jurisdiction over <u>Doe</u>'s custodian. Petitioner nonetheless contends <u>Doe</u> offers persuasive authority.

The Court does not find <u>Doe</u> persuasive. As an initial matter, the Court is barred from considering the third factor. In <u>Martinez v. Clark</u>, 36 F.4th 1219 (9th Cir. 2022), the Ninth Circuit noted that 8 U.S.C. § 1226(e) provides that "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  The Ninth Circuit concluded that the IJ's "determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review." <u>Martinez</u>, 36 F.4th at 1228. Thus, Petitioner's disagreement with the IJ's decision that he poses a danger to the community is not subject to review by this Court.

Moreover, the Ninth Circuit has noted that many courts have applied the <u>Mathews</u>[4] test in considering due process challenges in the immigration context. <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206 (9th Cir. 2022). The Ninth Circuit noted that "<u>Mathews</u> remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." <u>Id</u>. at 1206-07. Yet, the Court notes that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of <u>Mathews</u>. <u>See</u>, <u>e.g.</u>, <u>Demore</u>, 538 U.S. at 523, 526–29; <u>see also</u> <u>Dusenbery v. United States</u>, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed <u>Mathews</u> as announcing an all-embracing test for deciding due process claims.").

Most district courts in the Ninth Circuit have employed the <u>Mathews</u> test, at least in the context of evaluating whether due process entitles a petitioner to a bond hearing. <u>See</u>, <u>e.g.</u>, <u>Jensen v. Garland</u>, 2023 WL 3246522, at *4 (C.D. Cal. 2023); <u>Galdillo v. U.S. Dep't of Homeland Sec.</u>, 2021 WL 4839502, at *3 (C.D. Cal. 2021); <u>Jimenez v. Wolf</u>, 2020 WL 510347, at *3 (N.D. Cal. 2020). The Ninth Circuit has also noted the common use of the <u>Mathews</u> test and assumed (without deciding) that it applies to due process claims in the immigration detention context. <u>Rodriguez Diaz v. Garland</u>, 53

---

[4] <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).

8

F.4th 1189, 1206-07 (9th Cir. 2022). Here, Petitioner's due process allegation is sufficiently analogous such that the Court finds the Mathews test appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been detained approximately 27 months. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's 27-month detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. The Ninth Circuit has also held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  Thus, at first blush, the factor appears to weigh in favor of Petitioner.

However, in Rodriguez Diaz v. Garland, a similar case, the Ninth Circuit cautioned, "in evaluating the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order." 53 F.4th at 1208.  The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. The Ninth Circuit reasoned that detentions longer than six months were considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all." As in the instant case, the petitioner in Rodriguez Diaz had received a bond hearing after he was detained. Id. at 1207. The Ninth Circuit noted it was significant that the petitioner was not without process during his detention. Id.

9

Here, as previously noted, Petitioner was initially detained for a period of just over a year – December 23, 1999, to January 29, 2021, before he was released on bond. He detained again on November 2, 2022. Since then, Petitioner has been continuously detained at ICE's private detention facility for a period of approximately 27 months. During his detention, Petitioner has received multiple bond reviews. During his initial detention, Petitioner received short-form bond reviews before a district judge. On January 29, 2021, the IJ conducted an individualized bond hearing and granted release on bond. On appeal, the BIA issued a decision overturning the IJ's decision and that ordered Petitioner be detained without bond, finding by clear and convincing evidence that Petitioner was both a danger to the community and a flight risk. On October 11, 2022, the IJ conducted another bond hearing, and found clear and convincing evidence that Petitioner was a danger to the community and denied release on bond. On January 31, 2024, the BIA affirmed the IJ's decision denying bond.

Second, the Ninth Circuit noted in Rodriguez Diaz that most of the detention period in that case "arose from the fact that [the petitioner] chose to challenge before the BIA and later this Court the IJ's denial of immigration relief." 53 F.4th at 1207-1208 (citing Demore, 538 U.S. at 531 n.14 ("'[T]he legal system is replete with situations requiring the making of difficult judgments as to which course to follow,' and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (quoting McGautha v. California, 402 U.S. 183, 213 (1971)); see also Prieto-Romero v. Clark, 534 F.3d 1053, 1063-65 & n.9 (9th Cir. 2008) (holding that an alien's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order and distinguishing a case in which the government made an "unusual move" that delayed resolution); DHS v. Thuraissigiam, 591 U.S. 103, 1197 (2020) (holding that expedited removal proceedings did not violate the Suspension Clause because asylum seeker could obtain his liberty by consenting to removal)).

Similarly, in this case, Petitioner has pursued numerous asylum applications, extensions of time, appeals, and petitions for review, culminating with a motion to the Ninth Circuit to simply hold removal proceedings in abeyance. In addition, the Ninth Circuit in Rodriguez Diaz found the petitioner's private interests were further diminished by the fact that he was subject to an order of removal from the United States. 53 F.4th 1208. Likewise, Petitioner is subject to a final order of

10

removal. Thus, while Petitioner's private interest in being free from prolonged detention of approximately 27 months weighs in his favor, it is greatly diminished given he has received several bond reviews, he has been determined a risk of danger to the community, and his detention has been prolonged due to his decision to challenge the removal order.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor weighs in favor of the government. As noted above, Petitioner has received several bond reviews by a district judge, the IJ, and BIA. In the last hearing before the IJ, Petitioner, while represented by counsel, had the opportunity to present evidence on his behalf. Notwithstanding Petitioner's evidence, the IJ concluded the government presented clear and convincing evidence that he presented a danger to the community. As with the petitioner in Rodriguez Diaz, ICE's decision to detain Petitioner was subject to numerous levels of review that offered him the opportunity to be heard by a neutral decisionmaker. 53 F.4th at 1210.  In Rodriguez Diaz, the Ninth Circuit also noted that the petitioner "received further procedural protections on the merits of his applications for relief from removal . . . includ[ing] the opportunity to seek a temporary stay of removal, which he sought and received." Id. Here, Petitioner has received the additional procedural protections in his applications for asylum and relief from removal, and in his requests for indefinite stay of removal. In Rodriguez Diaz, the Ninth Circuit determined that "[a]lthough further review of his removal order would take additional time and could thereby prolong his detention, [petitioner] in this case has not demonstrated that the fact of the review process following its ordinary course itself created a due process violation." Id. (citing Demore, 538 U.S. at 531 n.14; Prieto-Romero, 534 F.3d at 1063-65 & n.9). In light of the foregoing, the Court finds that the existing agency procedures sufficiently protected Petitioner's liberty interest and mitigated the risk of its erroneous deprivation.

With regard to the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. In Rodriguez Diaz, the Ninth Circuit noted the government's strong interest in the immigration context:

The government clearly has a strong interest in preventing aliens from "remain[ing] in the United States in violation of our law." Demore, 538 U.S. at 518, 123 S.Ct. 1708 (quotations omitted). Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function. The Supreme Court has thus specifically instructed that in a Mathews analysis, we "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Plasencia, 459 U.S. at 34, 103 S.Ct. 321. "Over no conceivable subject is the legislative power of Congress more complete." Flores, 507 U.S. at 305, 113 S.Ct. 1439 (quotations and alterations omitted).

This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings. The government has an obvious interest in "protecting the public from dangerous criminal aliens." Demore, 538 U.S. at 515, 123 S.Ct. 1708 (noting the government's justifications for the mandatory detention policy in § 1226(c)). Through detention, the government likewise seeks to "increas[e] the chance that, if ordered removed, the aliens will be successfully removed." Id. at 528, 123 S.Ct. 1708; see also Nken v. Holder, 556 U.S. 418, 436, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable ... permits and prolongs a continuing violation of United States law.") (quotations and alteration omitted).

These are interests of the highest order that only increase with the passage of time. The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal. The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent. See Johnson v. Guzman Chavez, —— U.S. ——, 141 S. Ct. 2271, 2290, 210 L.Ed.2d 656 (2021); see also Demore, 538 U.S. at 519, 123 S.Ct. 1708 (noting that Congress was presented with evidence that "[d]etention is the key to effective deportation") (quotations omitted). Indeed, the Supreme Court has specifically recognized Congress's determination that the government has been unable to remove deportable criminal aliens because of its initial failure to detain them. Demore, 538 U.S. at 519, 123 S.Ct. 1708.

Rodriguez Diaz, 53 F.4th at 1208.

The Ninth Circuit concluded that the government's interests were significant. For the same reasons, this Court concludes that the government's interests are significant.

In sum, the Court finds that while Petitioner's private interest to be free from continued detention is substantial, the government interests are significantly higher. As noted by the Ninth Circuit, such "interests can be compared to those at stake in prior cases in which the Supreme Court has upheld immigration detention schemes." Id. at 1213 (citing Demore, 538 U.S. at 513; Carlson, 342 U.S. at 527; Flores, 507 U.S. at 303). Where courts have found a detainee's interests outweighed those of the government in similar immigration cases, they have done so in the context of providing a bond hearing before an IJ, not in outright release. Petitioner, like the petitioner in Rodriguez Diaz, "has received far more process than the detainees in those cases." Id. The Court thus concludes that in

1    this case, the duration of Petitioner's detention has not exceeded the bounds of substantive due process

2    given the process Petitioner has enjoyed.

3        C.    <u>Punitive Nature of Detention</u>

4        Petitioner also contends that his civil detention constitutes punishment, and that his civil

5    detention for punitive ends violates his Fifth Amendment substantive due process rights. This Court

6    finds the Supreme Court's reasoning in <u>United States v. Salerno</u>, 481 U.S. 739 (1987), instructive.

7        In <u>Salerno</u>, the Supreme Court noted that, as an initial matter, the mere fact that a person is

8    detained does not inexorably lead to the conclusion that the government has imposed punishment. <u>Id</u>.

9    at 746-47 (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 (1979). In determining "whether a restriction on

10   liberty constitutes impermissible punishment or permissible regulation, we first look to legislative

11   intent." <u>Id</u>. at 747 (citing <u>Schall v. Martin</u>, 467 U.S. 253, 269 (1984)). "Unless Congress expressly

12   intended to impose punitive restrictions, the punitive/regulatory distinction turns on '"whether an

13   alternative purpose to which [the restriction] may rationally be connected is assignable for it, and

14   whether it appears excessive in relation to the alternative purpose assigned [to it].'" <u>Id</u>. (citing <u>Schall</u>,

15   467 U.S. at 269). In <u>Salerno</u>, the Supreme Court determined that the Bail Reform Act fell on the side

16   of the regulatory dichotomy because pretrial detention provisions were not formulated with

17   punishment for dangerous individuals in mind. <u>Id</u>. Rather, the detention provisions were established

18   for the legitimate regulatory goal of preventing danger to the community. <u>Id</u>. The same reasoning

19   applies here. The detention provisions in Section 1226(c) serve the legitimate regulatory goals of

20   "protecting the public from dangerous criminal aliens" and "increasing the chance that, if ordered

21   removed, the aliens will be successfully removed." <u>Demore</u>, 538 U.S. at 515, 528.

22        The Supreme Court noted that there was a "point at which detention in a particular case might

23   become excessively prolonged, and therefore punitive." <u>Salerno</u>, 481 U.S. at 747. District courts that

24   have considered whether the duration of detention had become punitive have looked at the process

25   afforded the detainee. In <u>Martinez Leiva v. Becerra</u>, the court considered whether continued detention

26   was excessive given Petitioner's risk of flight or danger to the public as well as other alternatives to

27   detention such as ICE's Intensive Supervision Appearance Program. 2023 WL 3688097, at *5-6 (N.D.

28   Cal. 2023). Here, Petitioner also contends that his detention has become punitive because he is not a

13

1   danger to the public or a flight risk, and ICE has effective alternatives to detention. The district court

2   in Martinez Leiva rejected these arguments, stating "that is what bond hearings are for." Id. The court

3   determined that due process concerns could be satisfied by adequate procedural protections such as a

4   bond hearing where Petitioner could advance these arguments, and where a neutral arbiter could

5   determine whether his liberty interest in being free from excessively prolonged detention outweighed

6   the risks of harm and flight posed by release under appropriate conditions. Id. at *5-6.

7        Similarly, in I.E.S. v. Becerra, 2023 WL 6317617, *7 (N.D. Cal. 2023), the district court

8   rejected Petitioner's punitive detention argument, noting that, while the petitioner "might be correct,"

9   "that is what bond hearings are for . . . . It is correct only if he is correct that he poses no risk (or a

10  manageable risk) of flight or danger, something that he has not yet had the opportunity to prove." Id.

11  (citing Martinez Leiva, 2023 WL 3688097, *5).  Similarly, the argument that prolonged detention was

12  excessive in light of alternatives like ICE's Intensive Supervision Appearance Program was an

13  argument a neutral arbiter could evaluate in a bond hearing. Id.

14       As noted above, Petitioner has had such opportunities and the IJ has determined that

15  Petitioner's risk of danger to the public outweighed such concerns.  As with the petitioner in Martinez

16  Leiva, while "[t]he conditions he describes at Golden State Annex are certainly problematic, . . . they

17  are largely problematic for all detainees there in the same way." 2023 WL 3688097, at *5. The

18  question whether the conditions are excessive to him has been resolved by the IJ in the previous bond

19  hearing. In light of the process afforded him, the Court cannot conclude that Petitioner's detention has

20  become so prolonged as to constitute punishment.

21       D.  Summary

22       Petitioner's detention has been prolonged. However, he has been afforded substantial due

23  process in the form of bond hearings, bond reviews, appeals, and applications for relief from removal.

24  Moreover, this is not a case where detention is indefinite.  As noted by the Supreme Court in Jennings,

25  "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings."

26  Jennings, 583 U.S. at 304.

27       Recently, Petitioner's motion to reopen his case before the BIA was denied. Thus, it appears

28  the matter is only pending review by the Ninth Circuit. Accordingly, the Court finds that Petitioner's

14

prolonged detention in this case does not exceed the bounds of substantive due process.[5] Should

circumstances change and continued detention appear to be indefinite in nature, due process may

require a different outcome.

**III.    ORDER**

The Clerk of Court is DIRECTED to assign a district judge to this case.

**IV.    RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that Respondent's motion to dismiss be

GRANTED and the petition be DISMISSED.

This Findings and Recommendation is submitted to the United States District Court Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-

one (21) days after being served with a copy of this Findings and Recommendation, a party may file

written objections with the Court and serve a copy on all parties. Id. The document should be

captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed

fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider

exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party

should reference the exhibit in the record by its CM/ECF document and page number, when possible,

or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page

limitation may be disregarded by the District Judge when reviewing these Findings and

Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file

objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is

immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule

/////

/////

---

[5] That is not to say his continued detention may not exceed the bounds of due process at some point in the future.

4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:  **February 4, 2025**                    */s/ Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE